H. B. WELLE & HILTNER AS CO-PARTNERS DOING BUSINESS UNDER THE FIRM NAME AND STYLE OF WELLE & HILTNER v. J. A. PFAU, LEO PFAU AND JOSEPH PFAU.[1]

February 3, 1922.

No. 22,534.

**Verdict supported by evidence.**

1. The evidence sustains the verdict to the effect that plaintiffs had sold and delivered to defendants a tractor for which they had not paid.

**Conditional sale—charge to jury.**

2. The defense was that there had been no sale, but that the tractor had been delivered to defendants for trial, and if satisfied they would purchase. The court also submitted the issue whether there had been a sale on condition that defendants might return it if not satisfied. In so doing the court did not err, to the prejudice of defendants, when charging that, if that was the agreement, defendants were the sole judges of whether the tractor should be kept or returned, but if the agreement was that the tractor should work in satisfactory manner and it did so work they had no right to return it.

**Charge to jury not prejudicial.**

3. A caution to the jury to keep in mind the interest or zeal of the attorneys in their clients' case in weighing their arguments was not reversible error.

Action in the district court for Stearns county to recover $1,800, the purchase price of an oil tractor. The case was tried before Roeser, J., and a jury which returned a verdict for $1,924.50. From

[1]Reported in 186 N. W. 578.

an order denying their motion for a new trial, defendants appealed. Affirmed.

*W. J. Stephens* and *Donohue & Quigley*, for appellants.

*James R. Bennett, Jr.*, for respondents.

HOLT, J.

The appeal is from an order denying a new trial after verdict for plaintiffs.

Plaintiffs alleged that in April, 1919, they sold and delivered a Rumeley Oil Pull Tractor to defendants, for which they agreed to pay $1,800, but failed so to do. The answer set up an agreement under which plaintiffs delivered the tractor mentioned on condition that it should work to the satisfaction of defendants; that it would work well in dust and mud; that certain unprotected gears would not cut; that, in case the tractor should work to the satisfaction of defendants, plaintiffs would sell and deliver the same at wholesale price, but in case it should not so work, or, in case said gears should be affected by dust or mud, then plaintiffs should take back the tractor without charge or obligation to defendants; that the tractor did not work to the satisfaction of defendants; that its gears cut and it utterly failed to do the work for which it was designed, whereupon defendants notified plaintiffs that they would not purchase the same and returned it to plaintiffs who accepted such return. The reply alleged that defendants selected the tractor, accepted it and expressed satisfaction of its working; that the tractor performed the work for which it was designed, and denied that there was any agreement for its return if not satisfactory to defendants, also denied that a return had been accepted.

The main contention is that the verdict has not sufficient support. Plaintiffs, sales agents for the manufacturer of this tractor, were related to defendants, the owners of a 250-acre farm near Freeport, Minnesota. They knew that defendants contemplated the purchase of a tractor, and naturally sought to interest them in the one they were selling. Defendants, no doubt, were disposed to buy from plaintiffs, provided the machine they handled did as good work and was as well made as any other tractor on the market. After

several talks concerning tractors, one of plaintiffs and one of defendants, who appears to be a practical mechanic, went to Minneapolis and spent some time in investigating 6 or 7 different makes of tractors, including the Rumeley and J. I. Case. The latter was the one preferred by the defendants because of inclosed gears, whereas the gears on the Rumeley were not covered at all. After the parties returned to Freeport some decision was reached, pursuant to which one of plaintiffs went back to Minneapolis and procured the tractor in question to be sent to Freeport where it was received by defendants, who used it to drag about 55 acres, and then, as they claim, notified plaintiffs that they would not retain it because the gears cut and they were not satisfied with it.

It is not claimed that there was any warranty. The jury could well find that there was a sale, with no other conditions attached than the implied one that the tractor should satisfactorily perform the work for which it was designed. On the other hand they could have found that the tractor was received and tried on the condition that defendants had the right to return it in case they were not satisfied, regardless of how it worked or wore under work. In testifying, the witnesses did not always appreciate and clearly express their thoughts upon the proposition whether or not there was an agreement that defendants should be the sole judges of the tractor's satisfactory performance or qualities. This proposition was often confused with the thought that plaintiffs in making the sale desired defendants, their relatives, to get a machine that would work so that defendants, as reasonable men, ought to be satisfied. An interminable cross-examination did not make for clarity. But we think the jury fully appreciated the situation and were capable of discerning the true meaning of the evidence. We think a fair examination of plaintiff Welle's entire testimony leads to the conviction that the jury placed the correct interpretation thereon, and hence were justified in the verdict based on an absolute sale, and not a delivery of the tractor for trial to be returned if defendants claimed to be dissatisfied with it.

The only doubtful question in the appeal arises upon the submission of an issue not raised by the pleadings. Plaintiffs sued for

goods sold and delivered. Defendants denied a sale, admitted a receipt of the goods for trial to be followed by a purchase by them if they were satisfied upon such trial. In addition to the issues thus made, the jury were instructed that, if they believed there was a sale on condition that the defendants should be satisfied with the tractor, then they could return it if not satisfactory to them. The particular part of the charge excepted to is: "It depends upon what the agreement was. If the agreement was that they were to be satisfied with it, that makes them the sole judges whether there is any reason for it or not, but if the agreement was that the machine should work satisfactorily, then of course if the machine does work satisfactorily and is in satisfactory condition they cannot arbitrarily say they are not satisfied with it."

This was followed by a statement that if the tractor was sold to defendants on condition that it should satisfy them, then they were the judges as to whether they were satisfied, and if not satisfied they did not need to have any reason for it. The charge evidently was intended to apply the law as expressed in McCormick H. M. Co. v. Chesrown, 33 Minn. 32, 21 N. W. 846, and Krenz v. Lee, 104 Minn. 455, 116 N. W. 832. The wording might have been more clear, but it seems to us the jury, in view of the course of the trial and the whole charge, must have fully appreciated that if they found the agreement was that defendants were to incur no liability to plaintiffs unless satisfied, after a trial, with the tractor, then the verdict should be for defendants, for they alone had the right to decide whether it was satisfactory to them or did the work to their satisfaction. On the other hand, if the agreement was only that the tractor should work satisfactorily in the estimation of men competent to judge, and it did so work, then the condition was not broken, and the sale, assuming one to have been made, should stand.

The court, in cautioning the jury that theirs was the responsibility of determining disputed facts, said: "The attorneys, of course, help the parties lay their testimony before you and they are necessarily of course prejudiced in favor of their side. If they were not they would not be good attorneys. Sometimes that prejudice towards their side creeps into their arguments and you have to take

their arguments in that light. The ultimate question, however, of where the truth lies is for you and you alone, using your best judgment as practical men." Error is assigned upon the language quoted, not including the last sentence, the claim being that it virtually tells the jury to disregard the arguments off the attorneys, which is contrary to the law as determined in Svenson v. Lindgren, 124 Minn. 386, 145 N. W. 116, Ann. Cas. 1915B, 734. We do not think the caution given by the court constitutes reversible error.

In the case cited there was a flat direction to disregard the arguments of counsel. In the instant case the court does no more than to call attention to the well known fact that the attorney's proper interest in a client's case may pervade and color his arguments. The same caution has always been deemed proper to give the jury in considering the testimony of interested witnesses. No more was said in this case, and in language less forceful, than that which was held not to merit rebuke in State v. Evans, 88 Minn. 262, 92 N. W. 976.

The court in Gibson v. State, 26 Fla. 109, 7 South. 376, cited by appellant, went to the extent of charging that attorneys spend a lifetime in learning how "to distort, change, color and discolor facts" so as to use them to the advantage of their clients. This was held error. So in Tucker v. State, 167 Ala. 1, 52 South, 464, also cited, where an attorney did not exceed the bounds of legitimate argument in addressing the jury, it was error to instruct the jury to disregard that part of the argument. There is no parallel between the two cases just referred to and the case at bar.

No other alleged error justifies discussion.

The order is affirmed.